**TILE–CRAFT PRODUCTS CO., INC.,**
**Plaintiff-Appellant,**

v.

**EXXON CORPORATION,**
**Defendant-Respondent.**

No. 40601.

Missouri Court of Appeals,
Eastern District.

April 17, 1979.

Richard B. Dempsey, David L. Baylard, Shifrin, Treiman, Dempsey & Ulrich, St. Louis, for plaintiff-appellant.

Lon Hocker, Jr., and Edward K. Fehlig, Ziercher, Hocker, Tzinberg, Human & Michenfelder, Clayton, for defendant-respondent.

GUNN, Judge.

An alleged breach of distributorship contract by defendant-respondent Exxon Corporation gave rise to a three count cause of action by plaintiff-appellant Tile-Craft Products Co., Inc. Tile-Craft's first count charged that Exxon failed to give reasonable notice of its termination of the distributorship agreement. The second count charged Exxon with an unlawful conspiracy to take over Tile-Craft's business territory. The third count charged Exxon with breach of contract in failing to give 120 days written notice of termination according to the terms of the distributorship agreement. At trial Tile-Craft dismissed its first count relating to reasonable notice of termination. The jury returned a defendant's verdict in favor of Exxon on the second (conspiracy) count. A jury verdict for $3,600 was rendered for Tile-Craft on the third (breach of contract) count. Tile-Craft appeals only the judgment on the third count alleging trial court error in denying its motion for new trial based on inadequacy of damages. This appeal, then, relates only to Tile-Craft's count III for breach of contract for failing to give contractual notice of termination of the distributorship agreement. We affirm.

On February 16, 1970, Tile-Craft and Exxon[1] entered into a contract by which Tile-Craft agreed to become a distributor for Nevamar, a plastic laminate product used for the construction of cabinets and counter tops.[2] Pursuant to the contract Tile-Craft purchased approximately $60,000 worth of Nevamar from Exxon each year during the four year period of distributorship. Tile-Craft estimated its annual average net profit from the Nevamar sales to be $17,000. Exxon estimated Tile-Craft's profits to be $570 per year.

In December, 1973 Tile-Craft advised Exxon of a proposed move to another location in the St. Louis Metropolitan area which would entail expenses in moving materials related to the Nevamar promotion such as display racks. On February 23, 1974, after the move was made, Exxon orally advised Tile-Craft of its intention to terminate the distributorship contract and open its own factory warehouse for distribution. The distribution contract between the parties required 120 days written notice for the termination of the distributorship by either party. Within a month after the oral notice of termination Exxon commenced its own distributorship, but Tile-Craft continued to make its purchases of Nevamar products. According to Exxon, Tile-Craft was able to continue to purchase Nevamar at the distributor's price level or less. And even Tile-Craft acknowledged that it experienced no problems in securing Nevamar from Exxon; that the only change of conditions was that it was required to pay cash for the items purchased and—in a conflict of testimony with Exxon to be resolved by the jury—that the prices were somewhat higher. Exxon's reason for demanding cash was that it had experienced a "slow payment" problem with Tile-Craft when it was a distributor and had thus decided to transact business on a cash basis. When the distributorship was terminated Exxon accepted the return of that portion of the Nevamar inventory that met the return specifications of the distributorship agreement. After the distributorship

---

1. The contract was between Tile-Craft and Enjay Chemical Company, a predecessor in interest of Exxon.

2. Count 1 of Tile-Craft's petition, which was ultimately dismissed, alleged that an exclusive distributorship was provided by the contract. However, the contract and evidence belie any exclusive distributorship. In fact, the definition of "distributorship" does not appear anywhere in the contract or trial evidence.

termination Tile-Craft acquired a competing line of laminated products which was ultimately abandoned as being unprofitable.

Tile-Craft's theory of damages as related to the jury was for Exxon's failure to provide 120 days written notice of its intent to terminate the distributorship as was required by the terms of the agreement. Damages sought by Tile-Craft included losses on the Nevamar inventory which was not accepted for return, costs of moving, rebuilding and destroying Nevamar display racks and lost profits, including losses sustained in handling the competing line of laminated products.

The foundation of our opinion is grounded on some rather fundamental legal rubric. When the trial court has approved a verdict following a claim of inadequacy of damages and has overruled a party's motion for a new trial, our inquiry on appeal is limited to a determination of whether there was substantial evidence to support the verdict and whether the trial court abused its discretion in denying the motion. *Crabtree v. Reed*, 494 S.W.2d 42 (Mo.1973); *Long v. Hooker*, 443 S.W.2d 178 (Mo.1969). Accordingly, we must consider the evidence in the light most favorable to the verdict, keeping in mind that the credibility, weight and value of the testimony is a matter for the jury. *Long v. Hooker*, supra; *Nichols v. Blake*, 395 S.W.2d 136 (Mo.1965); *Cohen v. Archibald Plumbing & Heating Co.*, 555 S.W.2d 676 (Mo.App.1977); *Wells v. Bellman*, 531 S.W.2d 770 (Mo.App.1975). The jury's assessment of damages is conclusive unless the verdict is so shockingly meager as to indicate that it resulted from the arbitrary or prejudiced exercise of discretion. *Nichols v. Blake*, supra; *Pinkston v. McClanahan*, 350 S.W.2d 724 (Mo.1961); *Ford v. Long*, 514 S.W.2d 378 (Mo.App. 1974). If a jury finds the issues in favor of liability, it must award damages commensurate with the nature and extent of the injuries. *Pinkston v. McClanahan*, supra. Here, based on its theory of the case, Tile-Craft is entitled only to those damages which arise as the proximate result of Exxon's failure to give 120 days written notice of its desire to terminate the distributorship. It is our opinion that no damages accrued. But as Exxon does not challenge the $3,600 damages verdict on appeal, the issue before us is only whether the trial court abused its discretion in refusing to grant a new trial because of inadequate damages. We affirm the judgment, for we conclude that the trial court displayed no abuse of discretion in denying Tile-Craft's motion for new trial.

Unquestionably Exxon did not provide Tile-Craft with 120 days written notice of its intention to terminate the contract. And Tile-Craft cites case law which holds that termination of a contract is effective only if prefaced by compliance with any conditions precedent to the termination privilege. *American Institute of Marketing Systems, Inc. v. Alfred L. Lamarche, Inc.*, 469 S.W.2d 929 (Mo.App.1971); *National Alfalfa D. & M. Co. v. 4010 Washington, Inc.*, 434 S.W.2d 757 (Mo.App.1968). But whether or not Exxon properly terminated the contract, Tile-Craft suffered no injury. We refer to each item of alleged damage separately, viewing the evidence in the light most favorable to the verdict:

(1) Inventory sold for scrap: The contract relied upon by Tile-Craft expressly delineated the condition of the Nevamar sheets which would be accepted on return by Exxon. There was evidence to the effect that Exxon accepted the return of the inventory valued at $14,081.88 and refused to accept the return of 15,000 square feet which did not meet the contract conditions. As Exxon was under no obligation to accept the return of nonconforming material in any event, the failure to provide written notice of termination is irrelevant to this claim.

(2) Storage costs for unreturned inventory: As stated above, Exxon was not obligated to accept nonconforming sheets under the terms of the contract. No greater duty would arise as the result of termination, whether or not proper.

(3) Costs of moving, rebuilding and destroying the Nevamar display racks: Both parties to the distributorship contract had

the unconditional right to terminate the agreement after providing the requisite notice. The cost of moving, rebuilding and destroying the display racks bears no correlation to the act of providing 120 days notice after the move had been made. The cost would be the same whether or not the contract was terminated properly.

(4) Lost profits: Tile-Craft filed orders for Nevamar until August 19, 1974, and every purchase request was supplied. While there may have been some delay due to credit problems, no breach was alleged on that ground. Tile-Craft and Exxon disagree as to whether a price increase followed the oral termination, but such a claim of damage is not proximately related to the failure of adequate notice. Tile-Craft attempts to relate its lost profits to Exxon's allegedly wrongful termination and the commencement of its own distributorship in the St. Louis area. Yet, the fact remains that Exxon continued to fill Tile-Craft's orders for Nevamar and—according to its agent—at a better price than before the distributorship was terminated. There is nothing in the record to indicate any strictures on Tile-Craft's operation. The only apparent change was that no credit was extended but that for the reason that Tile-Craft had been slow in making its payments. Certainly, the record will not support a claim that the distributorship was exclusive or that Exxon could not commence its own distributorship as it did.

■ (5) Losses related to securing a competing distributorship: Tile-Craft seeks to apply the Uniform Commercial Code concept of "cover" to its situation and claims that it is entitled to damages which arose out of its substituted plastic laminate distributorship of a competing product. *See,* § 400.2–712 RSMo (1969). As Exxon continued to fill Tile-Craft's orders for Nevamar, we fail to see how the cover remedy is relevant. Tile-Craft seems to take the position that the entire distributorship entity was the "goods" which the seller failed to deliver, § 400.2–711 RSMo (1969), but we do not believe that a distributorship is contemplated within the U.C.C. definition of "goods." 400.2–105 RSMo (1969). In any event, losses which accrued from the competing dealership bear no proximate relation to the notice requirement. The party who seeks to recover damages for breach of contract has the burden of proving that damages have accrued as a result of the breach. *Beuc v. Morrissey,* 463 S.W.2d 851 (Mo. banc 1971); *Pallardy v. Link's Landing, Inc.,* 536 S.W.2d 512 (Mo.App.1976); *Herbert & Brooner Construction Co. v. Golden,* 499 S.W.2d 541 (Mo.App.1973); *Equity Mutual Ins. Co. v. Affiliated Parking, Inc.,* 448 S.W.2d 909 (Mo.App.1969). Tile-Craft has failed to prove damages as result of the breach for failure to give proper notice. Hence, the trial court did not err in denying the motion for new trial.

Judgment affirmed.

REINHARD, P. J., and CRIST, J., concur.