**Robert VIGANO, Robert Hines, Greers Ferry Builders, Inc., Plaintiffs–Appellees/Cross Appellants,**

v.

**WYLAIN, INC., Defendant–Appellant/Cross Appellee.**

**Nos. 80–1016, 80–1024.**

United States Court of Appeals, Eighth Circuit.

Submitted June 9, 1980.

Decided Oct. 31, 1980.

David R. Evans, Clayton, Mo., argued, for plaintiffs–appellees/cross appellants.

Jim J. Shoemake, Guilfoil, Symington, Petzall & Shoemake, St. Louis, Mo., for Wylain, Inc.

Before HEANEY and ARNOLD, Circuit Judges, and OVERTON,* District Judge.

OVERTON, District Judge.

This case is an action for breach of contract with federal jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332. The three plaintiffs, Robert Vigano, Greers Ferry Builders, Inc., and Robert J. Hines allege they were distributors of

* The Hon. William R. Overton, United States District Judge for the Eastern District of Ar- kansas, sitting by designation.

modular homes produced by the Continental Homes Division of defendant Wylain, Inc., and that Wylain's wrongful termination of their distributorship agreements caused each of them serious financial loss. After a four day trial, the District Court[1] jury awarded plaintiffs damages totaling $82,500.

Defendant Wylain has appealed, claiming the trial court erred in submitting the case to the jury given the state of the pleadings and proof, and setting forth several grounds for reversal. Each plaintiff has filed a cross–appeal based on the trial court's exclusion of certain proffered evidence of damages. For reasons set out, we affirm the trial court's decision and deny both the appeal and the cross–appeal.

For a number of years, the Continental Homes Division of Wylain, Inc., manufactured modular homes at its Malden, Missouri, plant which were sold to customers in the five state area surrounding the plant. The facility was closed in April of 1978 for unspecified "economic" reasons.

Plaintiffs' First Amended Complaint alleged in three counts that each of them had acted as a distributor of Wylain's Continental Homes in various parts of Missouri (Vigano), Arkansas (Greers Ferry) and Illinois (Hines). Attached to the Amended Complaint was an unexecuted copy of a document styled "Independent Distributorship Agreement", which forms the basis of this suit. The document, which was prepared by Wylain, is printed in the form of a contract and appears in all aspects to be intended by the preparer to serve as a contract. The agreement purports to establish terms of dealing between Wylain's Continental Homes Division and those who would distribute its products to dealers and the general public.

There was testimony at trial by plaintiff Robert Vigano that he signed a copy of the Independent Distributorship Agreement during a meeting with Mr. Harvey Davidson, Wylain's Regional Sales Manager, and that Davidson retained a copy of the contract with the understanding that Mr. Mason of Wylain would sign for Wylain and return the agreement to Vigano. Vigano never received a copy of the agreement executed by an officer of Wylain. Tr. 209. This agreement was to set Vigano up as Wylain's exclusive distributor in a territory including parts of southwest Missouri and northwest Arkansas. Vigano had previously purchased the sole–proprietorship known as Lake Homes from a Mr. Ralph Tucker who continued to be employed by Wylain in another capacity.

Mr. William Davidson, President of Greers Ferry Builders, Inc., testified that he signed a version of the Independent Distributorship Agreement after discussions with Mr. Harvey Davidson, who is William's brother. The version signed by Greers Ferry in the spring of 1975 was identical to that attached to plaintiffs' First Amended Complaint, except that it was typewritten rather than printed. This contract was signed by a Mr. Cooper of Wylain and returned to Greers Ferry. In 1976, a newly printed but otherwise identical version of the contract was signed by William Davidson of Greers Ferry and given to Harvey Davidson for execution by Wylain. This agreement was also signed by Cooper for Wylain and returned to Greers Ferry in May of 1976.

At trial, neither Vigano nor Greers Ferry was able to produce a copy of the Independent Distributorship Agreement executed by an officer of Wylain. Vigano testified that he never received such a document from Wylain. Greers Ferry was unable, despite a diligent search of their records, to produce their copy of the document. These circumstances differ from those of plaintiff Robert J. Hines, who did not testify to signing such an agreement. In essence, however, the claims of Vigano and Hines are the same since neither could or did allege a completed written contract. Rather, they alleged an oral agreement pursuant

---

1. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri presiding.

to the terms of the Independent Distributorship Agreement. Greers Ferry, on the other hand, alleged a written contract which was lost or misplaced.

Robert Vigano purchased his Lake Homes distributorship January 1, 1978. Between that date and April 19, 1978, when the Continental plant closed, Vigano sold five homes for Wylain. The fifth such order was never submitted to Wylain on the advice of Wylain's regional sales manager, who informed Vigano that neither this nor any of the four previous orders would be honored. This was despite the fact that down payment checks had been accepted and deposited by Wylain as to the first four. The jury awarded Vigano $29,000 for his lost profits on these five home sales.[2]

Greers Ferry had been a distributor for Wylain since 1975, as noted earlier, and had received checks from the appellant during 1976 and 1977 in payment of the 5% volume discount. Two orders for modular homes had been submitted by Greer's Ferry at the time of the plant closing which were never filled. The jury awarded Greer's Ferry $15,000 in damages.

Plaintiff Robert Hines testified that he reached an agreement in November, 1977, with Wylain's regional sales manager for him to become Wylain's distributor for a territory in northern Illinois. Hines submitted thirteen orders for Continental Homes prior to the announcement by Wylain on April 19, 1978 that its plant would close. The jury returned a verdict for Hines in the amount of $38,500 based on his testimony as to his losses on these thirteen homes.

The parties apparently agree that Missouri law is applicable, and since the case was submitted on instructions based on Missouri law, we conclude for purposes of this appeal that any question as to applicability of Illinois or Arkansas contract law has been waived.

## I.

Wylain contends as a matter of law that plaintiffs' claims are barred by the Statute of Frauds provision in Article 2 of the Uniform Commercial Code, § 400.2–102 RSMo. (1969). The statute provides in pertinent part:

> Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought . . .

The clearest indication of Missouri law on this question, however, is to the effect that distributorship agreements are not covered by Article 2, *Tile–Craft Products Co. v. Exxon Corp.*, 581 S.W.2d 886, 889 (Mo.App. 1979).[3] The case is, therefore, covered by the more ancient Missouri Statute of Frauds, § 432.010 RS Mo. 1959, if at all.

Even a cursory reading of the cases interpreting the traditional Statute of Frauds in Missouri reveals clearly that the contracts alleged by Vigano and Hines are not within the statute. The statute, by its terms, applies only to contracts which cannot be performed in one year. In *Koman v.*

2. The basis of computation of each of the distributor's profits involves a series of discounts off the dealer price as established by Wylain. The distributor received a 4% distributor discount off the dealer price plus a 3% discount for early payment and a 5% volume discount which was applied retroactively after the sale of the fifth home. Vigano's testimony as to his losses was therefore based on this series of discounts as applied to the prices of the five homes he had sold.

3. We are inclined to disagree with this position as a matter of commercial law. Article 2 applies to transactions in goods, and the modular homes in question seem clearly to fit the § 2–105(1) definition of goods. Moreover, § 2–106(1) defines "contract for sale" to include both a present sale of goods and a contract to sell goods at a future time. Thus, the distributorship agreement would seem under the general view to be within the scope of Article 2. *Corenswet Products, Inc. v. Amana Refrigeration, Inc.*, 594 F.2d 129 (5th Cir. 1979). We are not, of course, in a position to change Missouri law on the question.

*Morrissey,* 517 S.W.2d 929 (Mo.1975), it was held that an employment contract incapable of performance in one year was, nonetheless, not within the statute because of a clause which allowed either party to terminate the agreement at will. Thus, it was *possible* that the contract might be performed in a year. See also, *Murphy v. Buschman-Jennings, Inc.,* 382 S.W.2d 29 (Mo.App.1964); *Want v. Century Supply,* 508 S.W.2d 515 (Mo.App.1974). Similarly, the terms of the agreement alleged by Vigano and Hines allowed the agreement to continue from month to month or to be terminated by either party on thirty days written notice. Hence, it is possible that the contract could have been performed in a year and it is thus not within the Statute of Frauds.[4] *Koman v. Morrissey, supra.*

## II.

■ Wylain secondly contends as a matter of law that the agreement was void for lack of mutuality or for indefiniteness. This argument stems from that clause of the Independent Distributorship Agreement which states:

> 6. Continental agrees to sell and deliver to Distributor at their current sales prices, and upon such terms as may be agreed between the parties, any of such products which Distributor orders from Continental from time to time. Title to such products shall pass from Continental to Distributor upon delivery to whatever site or location is agreed upon between the parties.

The Court has no difficulty in concluding that the above clause does not create insuperable problems of mutuality or of indefiniteness. The clause is in the nature of an agreement to agree.

> It has . . . been widely recognized of late that agreements to agree serve a valuable mercial need, especially in long term supply contracts where the parties wish to assume themselves respectively of a

source of supply and an outlet for production but are unable to foresee in a potentially fluctuating market what a reasonable price will be. In consequence, the Uniform Commercial Code and the new Restatement adopt the modern view that an agreement to agree as to a material term does not necessarily result in fatal indefiniteness.

Calamari & Perillo, *The Law of Contracts,* (2d Ed. 1977) at 51. See Restatement of Contracts (2d), § 32, illus. 8.

Moreover, under the circumstances of this agreement, it is only natural that the parties would leave open the price term and the terms of delivery since the agreement contemplated the sale of various types of homes over an extended period of time.

Wylain further argues that as a matter of law the alleged contract is void for want of mutuality due to a clause in the order form for individual homes which states that if production has not started within 30 days of receipt, Wylain might change the price or refuse shipment entirely. The meaning of such clause is hotly debated by the parties. Plaintiffs argue this was a price freeze clause while Wylain contends the clause means exactly what it says. Although the clause is not ambiguous on its face, we are inclined to accept plaintiffs' interpretation of it. The alternative would be to decline to enforce the clause entirely as an attempt by an artful draftsman to create the illusion of a contract without the substance of one. This we could not countenance, given the superior bargaining power of Wylain and the fact that Wylain prepared the document.

■ It is, however, unnecessary for us to decide the legal effect of this clause in the order form. The complaint is not based on the terms of the order form containing this troublesome language. Rather, it is based simply on violation of the Independent Distributorship Agreement, which contains no such language. Therefore, the defense based on the order form is irrelevant.

---

4. It should be noted that the trial judge gave an instruction allowing the jury to consider the Statute of Frauds as a defense and the defense was rejected by the jury. Since the statute is not applicable as a matter of law in light of the cited cases, Wylain actually got a more favorable presentation of the Statute of Frauds question than the law permitted.

### III.

Wylain also argues that the First Amended Complaint was somehow so vague that it failed to give proper notice to defendant–appellant of the substance of the claim. We find this argument utterly without merit. The complaint alleges in three counts that each plaintiff was "engaged in the sale and distribution of 'Continental Sectionalized Homes, Apartments and Commercial Buildings,' pursuant to the provisions of an Independent Distributorship Agreement, a copy of which has been attached hereto as Exhibit 'A', made a part hereof and incorporated herein by reference." It further alleges the mutual promises of the parties to the agreement and alleges with some particularity the damages suffered by each plaintiff. There can be no question that Wylain was well apprised that it was being sued on a form contract prepared by its own officers or counsel. The substantial course of dealing between Wylain and each plaintiff makes the notice argument frivolous. The doctrine of notice pleading under Rule 8 established in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) and subsequent cases is so well established as to need no elaboration here.

### IV.

Wylain also states a rather generalized objection to the trial judge's jury instructions. It is argued that the instructions did not place before the jury the contested issues in the case–particularly whether there ever was an agreement between the parties and whether such agreement was breached. The instruction as to each plaintiff was as follows:

Your verdict must be for the Plaintiff [  ] if you believe from a preponderance of the evidence that the Defendant Wylain, Inc. agreed to sell and deliver to the Plaintiff [  ] such "Continental" homes as he should order from time to time at the then current prices and that the Defendant Wylain, Inc. refused to sell and deliver to the Plaintiff [  ] such "Continental" homes as he either ordered on or before April 19, 1978 or would have ordered in good faith within a thirty (30) day period thereafter.

It is clear to this Court, if not to appellant, that such an instruction correctly placed before the jury the question of the existence *vel non* of a contract and any possible breach.

### V.

Wylain also argues there was a lack of substantial evidence to support the verdict on both the questions of liability and damages. We have reviewed the testimony and have no hesitancy in saying the testimony of plaintiffs and their witnesses regarding the promises and representations made by Wylain adequately support liability on each of the three contracts. Moreover, the testimony as to Wylain's price and discount system for its distributors fits comfortably with the amount of damages found.

### VI.

Finally, Wylain argues the trial court erred in admitting parol proof of the written agreement alleged by Greers Ferry. Secondary proof of a written contract is essentially a problem coming under the Best Evidence Rule, Rule 1002 et seq. of the Federal Rules of Evidence, not the Statute of Frauds. This rule is merely one expressing a preference for the original document: "to prove the content of a writing ... the original writing is required, except as otherwise provided in these rules ..." If the original cannot be produced because lost or destroyed, the proponent's case is not necessarily lost. Rule 1004 allows "other evidence" in such an event. The defendant need not, of course, admit the existence of such an agreement in order to allow such proof. *Any suggestion to this effect in Wylain's brief is clearly to be rejected as it would defeat the purpose of the rule.*

As to the cross–appeal, it is argued by each plaintiff–cross appellee that the trial court erred in disallowing evidence of lost profits from future sales of homes which would have occurred during the thirty day termination period provided for by

the agreement. For reasons which we will set out, we hold the trial court was correct in excluding such evidence of lost profits as too speculative and uncertain.

Missouri law on recovery of lost profits appears substantially in accord with the general view set out in the first Restatement of Contracts, § 331: "Damages are recoverable for losses caused or for profits or other gains prevented by the breach only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty," quoted in *Coach House of Ward Parkway v. Ward Parkway Shops*, 471 S.W.2d 464, 471 (Mo.1971). The court in *Coach House* further approved the comment to the Restatement:

> "Furthermore, there are cases in which the experience of mankind is convincing that a substantial pecuniary loss has occurred, while at the same time it is of such a character that the amount in money is incapable of proof. In these cases the defendant usually has reason to foresee this difficulty of proof and should not be allowed to profit by it. In such cases, it is reasonable to require a lesser degree of certainty as to the amount of the loss, leaving a greater degree of discretion to the jury . . ."

The proffered proof in this case does not meet the reasonable degree of certainty standard for any of the three plaintiffs.[5] This is perhaps most clear in the case of plaintiff Robert Hines. "The offer of proof made on behalf of Mr. Hines stated that he would testify based upon his personal knowledge of the territory and the information which he had obtained from his dealers that an additional fifteen homes would have been sold within thirty days of April 19, 1978." Appellee's Brief at 22. How the number fifteen was arrived at is not indicated, but we do not deem this problem decisive. There is no indication who the purchasers of these fifteen homes would be, nor is there any showing or offer of proof

that anyone had, in fact, made a firm commitment to purchase even one home. Such testimony seems clearly too speculative to be allowed as proof of damages.

The trial court also declined Robert Vigano's offer of proof that he would have ordered an additional ten homes during the thirty day termination period. This proffered testimony was said to be based upon "actual discussions which Mr. Vigano was then conducting at the time that the appellant wrongfully terminated his agreement." Appellee's Brief at 15. Apparently no firm commitments had been obtained from any of these ten prospective purchasers. Our conclusion that the proffered testimony of Vigano and Hines is too speculative to be probative of actual damages is buttressed by the fact that in each case the number of homes which allegedly would have been sold during the thirty day notice period is grossly disproportionate to the number which had been sold by the two businesses during their period of operation. Vigano sold five homes between January 1, 1978, and April 19, 1978, when the closing of Wylain's Malden plant was announced. Hines sold thirteen during the same period. Even if we assume that the sales of such homes would be subject to seasonal increases in the month following April 19, the figures alleged in the offer of proof are grossly disproportionate to the number of previous sales by the two organizations. When this is added to the fact that the testimony was to be based on mere discussions with prospective customers, we can only conclude the District Judge was correct in excluding such testimony.

As to Greers Ferry, the result is perhaps not as clear–cut. But we are convinced the trial court did not abuse its discretion by excluding the offer of proof as to four sales which would have occurred during the thirty day termination period. Some doubt is perhaps raised by the fact that the offer in this case was considerably more specific and included the names of the four purchasers

---

5. Implicit in our discussion of plaintiffs' testimony as to profits lost on homes which had been sold by them, *see* text accompanying n.2, *supra*, is our belief that this proof did meet the degree of certainty as to damages required by Missouri law.

and the supposed purchase prices. Since Greers Ferry had sold fourteen homes for Wylain in 1977, the suggestion that four would have been sold in one month of 1978 seems somewhat disproportionate, though not entirely unreasonable. However, since the offer of testimony was again based only on negotiations with prospective customers, we are not persuaded that the trial court erred in excluding such proof. The cross–appeal is, therefore, denied in its entirety.

Other points raised in appellant's brief have been considered and found to be without merit. The judgment of the District Court is

Affirmed.