**PAULSON, INC., George P. Corniotis and Marsha F. Corniotis, Plaintiffs,**

v.

**BROMAR, INC., Bromar Hawaii, Borden, Inc., and Doe Defendants 1–110, Defendants.**

**Civ. No. 91–00226 HMF.**

United States District Court, D. Hawaii.

Oct. 16, 1991.

---

Davis & Levin, Mark S. Davis, Michael K. Livingston, Honolulu, Hawaii, for plaintiffs.

Cades Schutte Fleming & Wright, C. Michael Hare, Ernest H. Nomura, Honolulu, Hawaii, Colleen K. Nissl, Borden, Inc., Columbus, Ohio, for defendant Borden, Inc.

Damon Key Bocken Leong Kupchak, Kenneth R. Kupchak, Joslyn V. Wood, Honolulu, Hawaii, for defendant Bromar, Inc.

FONG, Chief Judge.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT BORDEN, INC.'S MOTION FOR DISMISSAL OF CERTAIN CLAIMS AND FOR PARTIAL SUMMARY JUDGMENT AS TO OTHERS

#### INTRODUCTION

On September 16, 1991, the court held a hearing on defendant Borden, Inc.'s ("Borden's") motion for partial summary judgment, filed on June 24, 1991. Defendant Bromar, Inc. filed a joinder in this motion on August 29, 1991. Plaintiffs filed an opposition on August 30, 1991. Defendant Borden filed a reply on September 10, 1991.

#### BACKGROUND

On June 20, 1981, defendant Borden appointed plaintiff Paulson, Inc. ("Paulson") as Borden's "exclusive" distributor of certain products, pursuant to the terms of a Distributor Agreement ("Distributorship Agreement"). The parties also executed a Brokerage Contract whereby Paulson would act as Borden's broker for certain other products. The Brokerage Contract was to run concurrently with the Distributorship Agreement and was to automatically terminate in the event that the Distributorship Agreement terminated. This arrangement was maintained for eight years until terminated by Borden as of July 1, 1989.

One of Paulson's claims is that, during this time, Borden violated the Distributorship Agreement in numerous ways, including the use of other distributors in violation of the agreement, and violating Paulson's right of first refusal to distribute Borden food products to military outlets in Hawaii.

On May 26, 1986, Paulson and Defendant Bromar Hawaii entered into a Broker Agreement for the brokerage of certain Borden products within the State of Hawaii. This agreement precluded Bromar Hawaii from soliciting or contacting any manufacturer with whom Paulson had contracted. Paulson alleges that in 1989, in violation of this agreement, Bromar Hawaii began secretly negotiating with Borden to replace Paulson as distributor. On May 31, 1989, Borden gave notice of its intent not to further renew the Distributorship Agreement, effective July 1, 1989.

Paulson then brought suit against Borden and Bromar claiming violation of the Distributorship Agreement and the Broker Agreement, and wrongful termination of the Distributorship Agreement. In the instant motion, Borden seeks dismissal/summary judgment on the following issues: (1) Borden's right to refuse to renew the Distributorship Agreement absent good cause; (2) plaintiffs' request for tort and punitive damages arising out of the breach of the Distributorship Agreement; (3) whether breach of the implied covenant of good faith and fair dealing may constitute an independent cause of action; and (4) plaintiffs' standing to sue under Haw.Rev.Stat. § 480–2.

#### DISCUSSION

#### I. BORDEN'S RIGHT TO REFUSE TO RENEW THE DISTRIBUTORSHIP AGREEMENT.

Borden claims that there is no contested issue of material fact as to whether the

Distributorship Agreement could be non-renewed absent good cause. Borden cites section 1.5 of the Distributorship agreement which states

> [t]his Agreement ... shall be for a period of two years from July 1, 1981, and is renewable from year to year thereafter upon agreement of the parties.

According to Borden, the plain language of the contract should control. Thus, after the initial term, either party had an unconditional right to refuse to renew the contract at the outset of each successive year-long term.

### A. *Summary Judgment Standard.*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered when:

> ... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

■ The moving party has the initial burden of "identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987), *citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant must be able to show "the absence of a material and triable issue of fact," *Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir.1987), although it need not necessarily advance affidavits or similar materials to negate the existence of an issue on which the non-moving party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. *But cf., id.,* 477 U.S. at 328, 106 S.Ct. at 2555–56 (White, J., concurring).

■ If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support his legal theory. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 282 (9th Cir.1979). The opposing party cannot stand on his pleadings, nor can he simply assert that he will be able to discredit the movant's evidence at trial. *See T.W. Elec.,* 809 F.2d at 630. Similarly, legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Moreover, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *California Architectural Building Products, Inc. v. Franciscan Ceramics,* 818 F.2d 1466, 1468, (9th Cir.1987) *citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (emphasis in the original).

■ The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Insurance Co. of North America,* 815 F.2d 1285, 1289 (9th Cir. 1987), *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Id.*

However, when "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Elec.,* 809 F.2d at 631. Also, inferences from the facts must be drawn in the light most favorable to the non-moving party. *Id.* Inferences may be drawn both from underlying facts that are not in dispute, as well as from disputed facts which the judge is required to resolve in favor of the non-moving party. *Id.*

B. *Analysis of Distributorship Agreement.*

### 1. Applicability of UCC.

Borden argues that the court should apply the Uniform Commercial Code ("UCC"), as adopted by Hawaii, in evaluating whether Borden properly refused to renew the Distributorship Agreement. Plaintiffs disagree, claiming that the issue has not been decided by the Hawaii state courts. Although this is true, there seems to be a clear precedent in most other jurisdictions that the UCC does apply to distributorship agreements. Borden has cited cases from sixteen jurisdictions holding that the UCC applies to distributorship agreements. These jurisdictions include Alabama,[1] California,[2] Indiana,[3] Iowa,[4] Kentucky,[5] Maryland,[6] Michigan,[7] Mississippi,[8] New Jersey,[9] New Mexico,[10] New York,[11] Pennsylvania,[12] Texas,[13] Utah,[14] West Virginia[15] and Wyoming.[16] Plaintiff, on the other hand, could only cite one state which has not so held,[17] *see Tile–Craft Products v. Exxon, Corp.,*

581 S.W.2d 886 (Mo.Ct.App.1979), and the logic of that case was seriously questioned by the 8th Circuit Court of Appeals in *Vigano v. Wylain,* 633 F.2d 522, 525 n. 3 (8th Cir.1980).

■ In light of the overwhelming precedent from other jurisdictions, it is the court's judgment that the Hawaii Supreme Court would find the UCC applicable to distributorship agreements in this state as well. Accordingly, this court will apply the UCC to distributorship agreements.

### 2. Character of the Distributorship Agreement.

Plaintiffs argue that this Distributorship Agreement is actually a hybrid distributorship/brokerage contract, and as a result, may not fall within the UCC. However, as Borden correctly points out, the Brokerage Contract is separate and distinct from the Distributorship Agreement, the only connection between the two being a mutual termination arrangement. At issue in the

1. *Intercorp, Inc. v. Pennzoil Co.,* 877 F.2d 1524 (11th Cir.1989) (applying Alabama law).

2. *Aronowicz v. Nalley's, Inc.,* 30 Cal.App.3d 27, 106 Cal.Rptr. 424 (1972).

3. *Warrick Beverage Corp. v. Miller Brewing Co.,* 170 Ind.App. 114, 352 N.E.2d 496 (1976); *Moridge Mfg. Co. v. Butler,* 451 N.E.2d 677 (Ind.Ct. App.1983); *Monarch Beverage Co. v. Tyfield Importers, Inc.,* 823 F.2d 1187 (7th Cir.1987) (applying Indiana law).

4. *Corenswet, Inc. v. Amana Refrigeration, Inc.,* 594 F.2d 129 (5th Cir.1979), *cert. denied,* 444 U.S. 938, 100 S.Ct. 288, 62 L.Ed.2d 198 (1979) (applying Iowa law).

5. *Leibel v. Raynor Mfg. Co.,* 571 S.W.2d 640 (Ky.Ct.App.1978).

6. *Kirby v. Chrysler Corp.,* 554 F.Supp. 743 (D.Md.1982) (applying Maryland law).

7. *Aaron E. Levine & Co. v. Calkraft Paper Co.,* 429 F.Supp. 1039 (E.D.Mich.1976) (applying Michigan law).

8. *Babst v. FMC Co.,* 661 F.Supp. 82 (S.D.Miss. 1986) (applying Mississippi law).

9. *Jo–Ann, Inc. v. Alfin Fragrances, Inc.,* 731 F.Supp. 149 (D.N.J.1989) (applying New Jersey law).

10. *United Wholesale Liquor Co. v. Brown–Forman Distillers Corp.,* 108 N.M. 467, 775 P.2d 233 (1989).

11. *Division of Triple T Service, Inc. v. Mobil Oil Corp.,* 60 Misc.2d 720, 304 N.Y.S.2d 191 (1969) *aff'd,* 34 A.D.2d 618, 311 N.Y.S.2d 961 (1970).

12. *Artman v. International Harvester Co.,* 355 F.Supp. 482 (W.D.Pa.1973) (applying Pennsylvania law).

13. *Sally Beauty Co. v. Nexxus Products Co.,* 801 F.2d 1001 (7th Cir.1986) (applying Texas law).

14. *Quality Performance Lines v. Yoho Automotive, Inc.,* 609 P.2d 1340 (Utah 1980).

15. *Ashland Oil, Inc. v. Donahue,* 159 W.Va. 463, 223 S.E.2d 433 (1976).

16. *Meuse–Rhine–Ijssel Cattle Breeders of Canada, Ltd. v. Y–Tex Corp.,* 590 P.2d 1306 (Wyo. 1979).

17. Plaintiff cites three cases, but two of them were applying Missouri law, *see Tile–Craft Products v. Exxon, Corp.,* 581 S.W.2d 886 (Mo.Ct. App.1979); *Vigano v. Wylain, Inc.,* 633 F.2d 522, 525 n. 3 (8th Cir.1980) (reluctantly applying Missouri state law), while the third, *Lorenz Supply Co. v. American Standard, Inc.,* 419 Mich. 610, 358 N.W.2d 845 (Mich.1984), only discussed the applicability of the UCC's statute of frauds provision, without discussing the applicability of the other UCC provisions.

instant motion is only whether Borden had a right to refuse to renew the Distributorship Agreement absent good cause.

### 3. Terminability of Distributorship Agreement.

■ The Uniform Commercial Code states that

> [w]here the contract provides for successive performances but is indefinite in duration it is valid for a reasonable time but unless otherwise agreed may be terminated at any time by either party.

Haw.Rev.Stat. § 490:2–309(2). There is a strong public policy argument against restricting the right of termination of long term contracts. It is considered to be in society's best interest to allow parties to a long term contract to "end a soured relationship without litigation." *Corenswet, Inc. v. Amana Refrigeration, Inc.*, 594 F.2d 129, 138 (5th Cir.1979).

The contract at issue here was to be effective for an initial term of two years, and thereafter, was "renewable from year to year upon agreement of the parties." Distributorship Agreement, section 1.5. Under the plain meaning of the contract, a party could not terminate the agreement in the midst of a particular year's term, without complying with the "Termination" provisions set forth in section 3 of the contract. However, the contract clearly and explicitly provides that any party could, prior to the outset of a given term, refuse to agree to renew it for the next year. Distributorship Agreement, section 1.5.

Plaintiffs offer three reasons as to why the plain language of the contract should not control, however, they have failed to set forth sufficient evidence to withstand Borden's motion for summary judgment. Each of plaintiffs' arguments is considered below.

### a. *Understanding of the Parties.*

Mr. Corniotis first argues that it was his understanding that "the agreement was to be renewed and retained by Paulson for as long as Paulson desired to be Borden's distributor and broker." Opposition at 16. However, such ongoing agreements are ordinarily terminable at will after a reasonable time. Haw.Rev.Stat. § 490:2–309(2).

Thus, a "good cause" requirement will not be presumed absent an explicit contractual term to that effect.

Nonetheless, plaintiffs cite to several communications and actions which took place during the performance of the contract as demonstrating that the parties intended perpetual renewal, absent good cause. This evidence could be admissible as "course of performance" under Haw. Rev.Stat. § 490:2–208(1). However, when such evidence is inconsistent with the express terms of the contract, the express contractual terms control. Haw.Rev.Stat. § 490:2–208(2).

Here, the terms of the contract are clear—after the first two years, the contract is renewable from year to year upon agreement of the parties. Nowhere does the contract state that non-renewal is contingent on good cause. In light of the unambiguous meaning of the contract, the court holds that any communications or other events which occurred in the course of performance do not, as a matter of law, alter the plain meaning of the contract.

### b. *Terms of the Contract Relating to Termination.*

Second, plaintiffs argue that the provisions in the contract which require good cause for termination during the pendency of a "term" also apply to non-renewal. Opposition at 16–17. In support of this, they cite a letter in which a Borden representative had stated:

> The agreement between Borden and Paulson ... will not 'automatically be renewed for another successive two year term'. The contract renewal between Borden and Paulson, Inc., is specifically dealt with under Section 3.1 in our agreement. There will be no changes in this agreement.

Although the letter mistakenly cited section 3.1 instead of section 1.5 as being the appropriate provision governing renewal, an obvious clerical error will not suffice to create a triable issue of material fact for plaintiffs. The clear intent of this paragraph was to maintain the terms of the original agreement. Under the plain mean-

ing of the agreement, the good cause provisions of section 3.1 apply only to mid-term termination, not to non-renewal. Non-renewal is governed by section 1.5.

### c. *Probationary Guidelines for Brokers.*

Plaintiffs finally cite to certain "probationary guidelines" for brokers mentioned in a letter written by Mr. Gallow of Borden. Opposition at 17–18. They claim that these guidelines required Borden to have good cause before terminating the Distributorship Agreement. However, these guidelines, by their own terms, apply only to brokers, not to distributors. Therefore, they would have no relevance to Borden's right to not renew the Distributorship Agreement.

\* \* \* \* \* \*

In sum, even after viewing the facts in the light most favorable to the non-moving party, the court finds that the Distributorship Agreement did not require good cause for non-renewal. Accordingly, the court GRANTS Borden's motion for summary judgment as to this portion of plaintiffs' complaint. The court also GRANTS summary judgment for defendants as to any of plaintiffs' tort or punitive damages claims which are based on the wrongful non-renewal claim.

## II. RECOVERABILITY OF TORT OR PUNITIVE DAMAGES FOR BREACH OF THE DISTRIBUTORSHIP AGREEMENT.

Plaintiffs allege that Borden's conduct in breaching the Distributorship Agreement "was intentional and outrageous, thereby entitling Plaintiffs to recover tort damages and punitive damages in amounts to be proven at trial." Complaint, par. 27. In its motion, Borden states that plaintiffs have failed to plead a proper cause of action in tort because they have failed to allege a "tortious injury," such as emotional distress. Although styled as a motion for summary judgment, this is actually a motion to dismiss on the pleadings pursuant to Fed.R.Civ.P. 12(b)(6), and will be evaluated accordingly.

### A. *Standard of Review.*

Rule 12(b) of the Federal Rules of Civil Procedure provides as follows:

Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto, except that the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted....

In considering a 12(b)(6) motion to dismiss, the general rule is that a complaint should not be dismissed on the pleadings "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.1987) (*quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 112, 2 L.Ed.2d 80 (1957)); *Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir.1980); *California ex rel. Younger v. Mead*, 618 F.2d 618, 620 (9th Cir.1980).

In evaluating a complaint, the court must presume all factual allegations to be true and draw all reasonable inferences in favor of the nonmoving party. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987). *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (the complaint must be liberally construed, giving the plaintiff the benefit of all proper inferences).

### B. *Merits of Borden's Claim.*

Both sides agree that tort damages are available in a breach of contract action only if the breach occurred in a "wanton or reckless manner as to result in tortious injury." *Dold v. Outrigger Hotel*, 54 Haw. 18, 22, 501 P.2d 368, 372 (1972). In its initial memorandum Borden stated that, in order to plead a cause of action for tortious breach of contract, it is necessary to specifically plead some special "tortious injury," such as emotional distress. Memorandum in Support of Motion for Summary Judgment at 14. However, in *Chung v. Kaonohi Center Co.*, the Hawaii Supreme Court noted that "the dispositive factor is

... the wanton or reckless nature of the breach," not the particular nature of the injury. 62 Haw. 594, 602, 618 P.2d 283 (1980). In fact, under Hawaii law, plaintiffs need not set forth, in the pleadings, any special "tortious injury" claim. *See Dold v. Outrigger Hotel,* 54 Haw. 18, 501 P.2d 368 (1972) (although plaintiff only pled breach of contract, court allowed punitive damages to be awarded).

As if realizing that it had misdirected its initial motion, Borden, in its reply, argues that Plaintiffs have utterly failed to allege and demonstrate ... *what* constituted the "wanton" and "reckless" conduct that "breached" the agreements. There are really two claims here. First, Borden claims that the pleadings are insufficient as plaintiff failed to "allege" what constituted the "wanton" and "reckless" conduct. This is effectively a Rule 12(b)(6) motion to dismiss on the pleadings. Second, Borden claims that plaintiff has failed to "demonstrate" these facts as required to withstand a summary judgment motion. These claims are considered in turn below.

■ As to plaintiffs' failure to "allege" what constituted the wanton and reckless conduct, the court notes that it is not necessary for a plaintiff to set forth, in the pleadings, each and every fact that will ultimately be proven or disproven at trial. In fact, the court is instructed, in evaluating the sufficiency of a complaint, to draw all reasonable inferences in favor of the non-moving party. *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). It is, thus, enough that plaintiffs allege "wanton and reckless conduct."

Borden's second claim is that plaintiffs have failed to set forth sufficient evidence to demonstrate a contested issue of material fact on the existence of a "wanton" or "reckless" breach of the Distributorship Agreement. However, it is only at the time of the reply that Borden effectively sets forth a viable summary judgment motion. The initial memorandum only set forth a Rule 12(b)(6) challenge to the pleadings for failure to "allege" a specific "tortious injury." Because plaintiffs had no opportunity to respond, the court will not consider this argument at this time.

Accordingly, the court DENIES plaintiffs motion for summary judgment on, or dismissal of, plaintiffs' claims for tort and punitive damages flowing from the alleged breach of the Distributorship Agreement. This ruling does not apply to plaintiffs' claims for tort and punitive damages flowing from the alleged wrongful termination of the Distributorship Agreement, which are covered by Part I of this Order.

## III. IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALINGS.

Plaintiffs argue that the tort action for violation of the implied covenant of good faith and fair dealings, recognized in California in the insurer/insured context, should be extended to contracts generally in Hawaii. Plaintiffs Opposition at 31. Borden argues, however, that there is no independent cause of action, in the state of Hawaii, arising out of an alleged breach of the implied covenant. Again, although styled as a motion for summary judgment, this is actually a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted.

■ Nonetheless, the court finds that Borden is correct on the merits of its claim. This court has, in the past, explicitly refused to find such an independent cause of action for breach of the covenant of good faith and fair dealings. *Shasteen, Inc. v. Hilton Hawaiian Village Joint Venture,* No. 87–0357 HMF, slip op. (D.Haw. Feb. 12, 1988) ("No Hawaii court has found that such an independent cause of action exists").

Furthermore, the California bad faith cause of action, referred to by plaintiffs, has been limited almost exclusively to the insurance context. *See Foley v. Interactive Data Corp.,* 254 Cal.Rptr. 211, 765 P.2d 373 (1988). It is, thus, doubtful that plaintiffs could support a bad faith action, even under California law.

Accordingly, the court GRANTS Borden's motion to dismiss plaintiffs' Count II and IV insofar as they allege causes of action independent of Counts I and III.

## IV. STANDING TO SUE UNDER HAW. REV.STAT. § 480–2 (UNFAIR COMPETITION/DECEPTIVE TRADE PRACTICES).

Haw.Rev.Stat. § 480–2(a) declares that Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

Through the interpretive evolution of this section, two distinct causes of actions have emerged, (1) claims alleging "unfair methods of competition" (hereinafter "unfair competition" claims); and (2) claims alleging "unfair or deceptive acts or practices" (hereinafter "deceptive practices" claims). In 1987, standing to sue under the "deceptive practices" clause was limited to "consumer[s], the attorney general or the director of the office of consumer protection." Haw.Rev.Stat. § 480–2(d). No analogous limitation was placed on standing to sue under the "unfair competition" clause.

In an effort to bring claims under both clauses, plaintiffs assert that Paulson has a cause of action under the "unfair competition" clause, and that Mr. and Mrs. Corniotis, as "consumers" have a claim under the "deceptive practices" clause. Borden challenges plaintiffs' standing under both provisions.

 Because standing to sue is a matter in abatement, not going to the merits of the claim, it should be resolved in a motion to dismiss, not a motion for summary judgment. *See* 6 J. Moore, W. Taggert, J. Wicker, *Moore's Federal Practice* par. 56.03 at 56–61 (2d ed. 1987). Accordingly, the court will treat Borden's "motion for summary judgment" as one to dismiss for lack of standing.

### A. *Paulson's Standing Under the "Unfair Competition" Clause.*

 Borden challenges Paulson's standing under the "unfair competition" clause on the ground that there is no private cause of action for "unfair competition" under Haw.Rev.Stat. § 480–2(a). In support of its argument, Borden cites two Hawaii Federal District Court cases. *See*

*Dash v. Wayne,* 700 F.Supp. 1056, 1058 (D.Haw.1988); *Lang v. Pacific Marine and Supply Co.,* 703 F.Supp. 1404, 1412 n. 24 (D.Haw.1989) (citing holding in *Dash v. Wayne*). This cases, however, have misapplied Hawaii state law.

Haw.Rev.Stat. § 480–2 is the Hawaii state version of § 5(a)(1) of the Federal Trade Commission Act ("FTCA"). As a result, Haw.Rev.Stat. § 480–2(b) directs courts, "[i]n construing this section," to the "rules, regulations and decisions of the Federal Trade Commission and the federal courts interpreting section 5(a)(1) of the Federal Trade Commission Act." Section 480–3 contains a second, more general, reference to the federal law for assistance in interpreting the entire chapter. Haw.Rev.Stat. § 480–3. The court in *Dash* applied federal law to hold that "there is no private cause of action for unfair methods of competition." *Dash* at 1058.

However, the Hawaii Supreme Court has made it clear the federal rulings are not to be blindly accepted, but are to serve primarily as guides to the interpretation and application of state law in light of the economic and business conditions of Hawaii. *Island Tobacco Co. v. R.J. Reynolds Tobacco Co.,* 63 Haw. 289, 627 P.2d 260 (1981). In particular, the Hawaii Supreme Court has emphatically stressed that the Hawaii statute "differs from the federal model in one essential aspect, enforcement." Whereas no private cause of action is allowed under the federal law, the Hawaii state version contains a blanket provision authorizing private actions for damages sustained under any provision of the chapter:

[A]ny person who is injured in the person's business or property by reason of anything forbidden or declared unlawful by this chapter:

(1) May sue for damages sustained by the person, and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater, and reasonable attorneys fees together with the costs of suit ...

Haw.Rev.Stat. § 481–13(a). *See Island Tobacco,* 63 Haw. 289, 300–01, 627 P.2d 260 ("The Federal Trade Commission Act vests power to enforce its provisions in the Federal Trade Commission; it contains no express private remedy. And federal courts historically have found that no right to private actions could be implied from the Act. *The enforcement provisions of Hawaii's law, on the other hand, do not impede private suits for treble damages based on violations of § 480–2*") (citations omitted) (emphasis added); *Bartleys Town and Country Shops v. Dillingham Corp.,* 530 F.Supp. 499, 514 (D.Haw.1982) ("Haw. Rev.Stat. § 480–2 differs from section 5(a)(1) of the Federal Trade Commission Act in that Hawaii's statute grants a private right of action whereas section 5(a)(1) contains no express private remedy. Section 480–2 is also designed to protect 'competitors' as well as 'competition.' " (citing *Island Tobacco* )). *See also Beerman v. Toro Mfg. Corp.,* 1 Haw.App. 111, 117, 615 P.2d 749 (1980) (allowing consumer standing under § 480–13 while assuming that standing of *businesses* was a foregone conclusion).

Because § 480–13(a) contains a blanket conferral of private standing, the Hawaii legislature found it necessary to enact § 480–2(d), limiting enforcement of the "deceptive practices" clause to "consumers, the attorney general or the director of the office of consumer protection." Haw.Rev. Stat. § 480–2(d). This effectively denied businesses standing to sue under the "deceptive practices" clause. No such limiting language was included for "unfair competition" claims under that section. In the absence of any additional limiting language, it seems clear that the generic standing provisions of § 480–13(a) should control. Paulson's cause of action should, thus, be allowed to proceed. Such a conclusion is not only legislatively mandated, but is thoroughly consistent with the broad enforcement spirit enunciated by the Hawaii state courts.

Accordingly, the court DENIES Borden's motion to dismiss for lack of standing, holding that Paulson has standing to bring an "unfair competition" claim under Haw. Rev.Stat. § 480–2.

**B.** *Standing of Mr. and Mrs. Corniotis to file Suit Under the "Deceptive Practices" Clause.*

Plaintiffs George and Marsha Corniotis, assert a separate cause of action under Haw.Rev.Stat. § 480–2 claiming "unfair and deceptive acts and practices." Mr. Corniotis is the sole shareholder, President, and Chairman of the Board of Directors of Paulson, and Mrs. Corniotis is an officer and director of Paulson. The harm that each claims appears to be in the form of diminished value of Paulson stock as a result of harm done to the corporation. Borden points out that this is, by nature, a derivative claim.

It is conceded that under the current version of the statute, the corporation, itself, would not have standing to sue under the "deceptive practices" clause of Haw. Rev.Stat. § 480–2(a). Borden therefore contends that "[i]t makes no logical or prudential sense to permit mere shareholders to assert a claim for injuries ... when the corporate entity itself can not." Borden's Memorandum in Support of Motion, at 21.

Plaintiffs have two responses: (1) Mr. and Mrs. Corniotis have a direct cause of action as "consumers," independent of the derivative action; and (2) because the cause of action accrued prior to the time the statute was amended to restrict corporate standing, the corporation would have standing under the old version of the statute, and therefore the shareholders have derivative standing. These contentions will be discussed, in turn, below.

 1. Direct Cause of Action
 by the Corniotis'.

Haw.Rev.Stat. § 480–2(d) allows that suits alleging "unfair or deceptive acts or practices" may be brought by "consumers." Section 480–1 includes, in its definition of "consumer," "[a] natural person ... who commits money, property, or services in a personal investment." Mr. and Mrs. Corniotis argue that they are "consumers" within the meaning of the statute because they have committed money, property, or

services to Paulson, and have, therefore, been harmed by defendants' actions.

However, the legislative history of § 480-2 clearly indicates that the purpose of defining a "consumer" as "[a] natural person ... who commits money, property, or services in a personal investment" was to protect "people who had invested in bogus financial schemes," not to protect shareholders whose corporations had been harmed by a deceptive practice of another business. *See* House Stand.Comm.Rept. No. 716–90, *reprinted in* 1990 *House Journal* at 1113 (explaining that this was why the word "personal" was placed before the word "investment").

Borden is correct to point out that any harm which Mr. and Mrs. Corniotis may have suffered is an indirect result of harm done to Paulson, and therefore is a derivative claim. To allow such a derivative claim by shareholders, when the corporation itself is barred from bringing suit, would defeat the purpose of the standing limitation expressed in § 480-2(d).

Therefore, the court holds, as a matter of law, that Mr. and Mrs. Corniotis have no independent claim against defendants under the "unfair or deceptive acts or practices" clause of § 480-2(d).

### 2. Derivative Action Pursuant to the Pre–1987 Standing Provisions.

Plaintiffs' second argument is more complicated. They contend that before the 1987 amendments, businesses were allowed standing under the "deceptive practices" clause of § 480-2. The effect of the 1987 amendment, which limited standing to "consumers," was to "preclud[e] [the clause's] application to private disputes between businessmen." Senate Standing Committee Report No. 1056 *reprinted in* 1987 Hawaii Senate Journal at 1345; Conference Committee Report No. 104 *reprinted in* 1987 Hawaii House Journal at 1053. Plaintiffs then argue that because their cause of action accrued prior to 1987, the old standing rules should apply to them, and Paulson itself should be allowed to sue under the "deceptive practices" clause.

At this point, Plaintiffs are arguing that the Corniotis' have standing to sue because Paulson *itself* has standing to sue under the "deceptive practices" clause. Yet, if Paulson, itself, has standing to sue, and is willing to bring suit, a purely derivative suit by the Corniotis' is unwarranted. Such derivative actions are generally only permitted when a corporation has "failed to enforce a right which may be properly assigned to it." *See, e.g.,* Fed.R.Civ.P. 23.1. Here, the corporation is actively seeking to protect its rights.

\* \* \* \* \* \*

Accordingly, the court GRANTS Borden's motion to dismiss for lack of standing, holding that the Corniotis' have no cause of action under § 480-2, derivative or otherwise. As to Plaintiffs' newly raised claim that Paulson itself has standing under the "deceptive practices" clause, this could only be considered if plaintiffs amend their complaint to reflect this claim.

IT IS SO ORDERED.