**PAULSON, INC., George P. Corniotis, and Marsha F. Corniotis, Plaintiffs,**

v.

**BROMAR, INC., Bromar Hawaii, Borden, Inc. and Doe Defendants 1–10, Defendants.**

**Civ. No. 91–00226 HMF.**

United States District Court, D. Hawaii.

Dec. 10, 1992.

Mark S. Davis and Thomas R. Grande, Davis & Levin, Honolulu, HI, for plaintiffs.

C. Michael Hare and Dennis W. Chong Kee, Cades, Schutte, Fleming & Wright, Honolulu, HI, for Borden, Inc.

Colleen K. Nissl, Borden, Inc., Columbus, OH, and Kenneth R. Kupchak and Diane D. Hastert, Damon, Key, Bocken, Leong & Kupchak, Honolulu, HI, for Bromar, Inc.

## ORDER GRANTING IN PART AND DENYING IN PART BROMAR'S MOTION FOR SUMMARY JUDGMENT AND DISMISSAL; DENYING PAULSON'S COUNTERMOTION AND MOTION FOR SUMMARY JUDGMENT; GRANTING BORDEN'S COUNTERMOTION FOR PARTIAL SUMMARY JUDGMENT

FONG, District Judge.

### INTRODUCTION

This case arose because on May 31, 1989, defendant Borden, Inc. ("Borden") terminated a distributorship agreement (the "Borden–Paulson agreement") pursuant to which plaintiff Paulson, Inc. ("Paulson") distributed grocery products in Hawaii for Borden. Defendant Bromar, Inc. ("Bromar") replaced Paulson as Borden's Hawaii broker. Before Borden terminated the Borden–Paulson agreement, Bromar had been Paulson's Hawaii distributor of Borden products (the "Bromar–Paulson agreement"). George Corniotis was the president of Paulson and Marsha Corniotis was a shareholder in Paulson (Paulson and the Corniotises will be collectively referred to as "Paulson.") Paulson brought suit against both Borden and Bromar.

Before the court today are a plethora of motions and countermotions for summary judgment and/or dismissal. They are treated seriatim below.

### I. STANDARDS OF REVIEW

#### A. *Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered when:

... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the initial burden of "identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). The movant need not advance affidavits or similar materials to negate the existence of an issue on which the opposing party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553.

■ If the moving party meets its burden, then the opposing party must come forward with "specific facts showing that there is a genuine issue for trial" in order to defeat the motion. Fed.R.Civ.P. 56(e); *T.W. Elec.*, 809 F.2d at 630. The opposing party cannot stand on the pleadings nor simply assert that it will discredit the movant's evidence at trial. *Id.* "If the factual context makes the [opposing] party's claim *implausible*, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Cal. Arch. Bldg. Prods. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.1987) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

■ The standard for summary judgment reflects the standard governing a directed verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). When there is a genuine issue of material fact, "the judge must assume the truth of the evidence set forth by the [opposing] party with respect to that fact." *T.W. Elec.*, 809 F.2d at 631. Inferences from the facts must be drawn in the light most favorable to the non-moving party. *Id.*

B. *Dismissal for Failure to State a Claim*

Rule 12(b) of the Federal Rules of Civil Procedure provides as follows:

Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto, except that the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted....

■ In considering a 12(b)(6) motion to dismiss, the general rule is that a complaint should not be dismissed on the pleadings "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.1987) (*quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 112, 2 L.Ed.2d 80 (1957)); *Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir.1980); *California ex. rel. Younger v. Mead*, 618 F.2d 618, 620 (9th Cir.1980).

■ In evaluating a complaint, the court must presume all factual allegations to be true and draw all reasonable inferences in favor of the non-moving party. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987). *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (the complaint must be liberally construed, giving the plaintiff the benefit of all proper inferences).

## II. THE BROMAR–PAULSON DISPUTE

A. *Bromar's Motion and Paulson's Counter–Motion for Summary Judgment on Count III (Breach of Contract)*

Bromar moved for summary judgment on Count III (Breach of Contract) in its motion filed October 9, 1992. Paulson responded with a counter-motion for summary judgment on this count.

Paulson's Count III alleges that Bromar breached two contracts: the Bromar–Paul-

son broker agreement[1] and a later non-disclosure agreement dated April 14, 1989 that Bromar and Paulson entered into during merger negotiations.[2] Count III alleges that Bromar breached the Bromar–Paulson agreement by soliciting to broker Borden's products in Hawaii, and that Bromar breached the Bromar–Paulson agreement and/or the April 14, 1989 non-disclosure agreement by disclosing unspecified information to Borden. This section will discuss the solicitation and then the disclosure.

### 1. *The Solicitation*

■ The facts involving the alleged solicitation are as follows. Before Borden terminated the Borden–Paulson agreement in May 1989, Borden representatives came to Hawaii to investigate finding alternate brokers to replace Paulson. Borden met with Bromar at that time, although Bromar denies that it "solicited" Borden's business or criticized Paulson's performance. When the Borden representatives returned from Hawaii, however, they had decided to replace Paulson with either Bromar or another company, L.H. Gamble, Inc.

Bromar contends that it did not cause Borden to terminate the Borden–Paulson agreement, and thus should be entitled to summary judgment because its actions did not cause any damage to Paulson. Bromar relies principally upon the affidavit of a Borden official, Lew Ash, who testified that he had already decided to terminate the Borden–Paulson agreement before meeting with Bromar in Hawaii.

Bromar does not succeed in showing an absence of an issue of material fact. Although Ash testified that he had already decided to terminate the Borden–Paulson agreement, the termination did not occur until after Borden interviewed Bromar representatives in Hawaii. A trier of fact could reasonably infer that the Bromar interview contributed to the decision to terminate the Borden–Paulson agreement.

■ Bromar also argues that Borden had selected two alternates to Paulson (Bromar and L.H. Gamble), and thus Borden would have terminated the Borden–Paulson agreement and awarded the contract to L.H. Gamble even if Bromar had not accepted the contract. Bromar's argument can be rephrased as follows to show its flaw: "Yes, I agreed not to compete with you, and yes, I accepted a contract in violation of that agreement, but if I hadn't accepted that contract, someone else would have, so you are not really injured." The injury is that Bromar was uniquely poised to take the contract away from Paulson, and had agreed not to do so. Breaching that promise is a basis of liability even if a third party might have replaced Paulson in Bromar's absence.

Finally, Bromar argues that summary judgment on Count III is appropriate because its meeting with Borden did not constitute "solicitation" which would violate the Bromar–Paulson agreement. Bromar contends that "solicit" means "to ask for

---

**1.** Paulson's Count III relies on the following provision of the Bromar–Paulson agreement:
*CONFIDENTIALITY.* It is agreed by the parties that:
(b) during the term of this Agreement and for a period of one year following its termination, whether such termination is caused by PAULSON or BROKER [Bromar], each party agrees that it will not, directly or indirectly, (1) retain or use in any way any information written or otherwise concerning active or inactive accounts of the other party, its method of operation, or transmit or reveal any of such information to persons in competition with the other party, or (2) solicit or aid in soliciting the business of any manufacturer or other supplier whose product lines are represented in Hawaii by the other party during the term of this Agreement.

**2.** Paulson's Count III relies on the following provision of the April 14, 1989 non-disclosure agreement:
In order to facilitate the negotiation of a merger with Bromar, Inc. ("Bromar"), of the Borden Foods distributorship franchise for the State of Hawaii (the "Franchise") from Paulson, Inc., Paulson, Inc. will provide to Bromar certain copies of and access [sic] its records and accounts relating to its ownership and operation of the Franchise. In consideration of the agreement to provide access, Bromar ... agree[s] that the records, accounts, materials, and any and all other information disclosed to them by Paulson, Inc. in connection with the Franchise shall be held in the strictest confidence and shall not be disclosed for any purpose....

with earnestness, to make petition to, to endeavor to obtain, to awake or excite to action, to appeal to, or to invite," and that a "willingness to discuss business upon invitation of another party [does not] constitute solicitation on the part of the invitee." *Aetna Bldg. Maintenance Co. v. West*, 39 Cal.2d 198, 246 P.2d 11, 15 (1952). Bromar argues that its one meeting was at most only a discussion of potential business with Borden, and not a solicitation.

The court rejects this argument and leaves the question of solicitation for the jury. First, because *Aetna* is distinguishable on its facts, the court will not hold as a matter of law that merely discussing business at the invitation of another is not solicitation. *Aetna* involved a worker who quit his job, notified his former employer's customers of his changed situation, and accepted their business if they offered. Concerned that a contrary holding would restrict competition and the right to change employers, the *Aetna* court held that mere acceptance of such offers was not solicitation. Here, the same concerns are not present—Bromar and Paulson were in an ongoing relationship at the time that Borden approached Bromar, and Bromar had agreed not to solicit Paulson's suppliers. In the context of such an agreement, the term "solicit" can be interpreted more broadly than in *Aetna* in order to give the parties to the contract more assurance that their partners will not deal behind their back.

Moreover, Paulson has shown enough evidence for a trier of fact to conclude that Bromar solicited Borden's business. Paulson relies in part on a memorandum from Lew Ash that stated that Bromar had completed the broker interview process and "stated their desire to be the Borden broker." Exh. J to Paulson Counter Motion filed November 5, 1992. That evidence when interpreted in Paulson's favor could lead to the conclusion that Bromar knew that Borden was seeking a new broker and that Bromar actively sought to be Borden's broker during the meeting. Thus, the solicitation question should be left for the jury, and Bromar's motion for summary judgment on the solicitation issue is DENIED.

Turning to Paulson's arguments, the court DENIES Paulson's counter-motion for summary judgment on Count III. Bromar officials will testify that they did not attempt to solicit Borden's business. A reasonable trier of fact could believe this testimony and conclude that Bromar was not involved in Borden's decision to terminate the Borden–Paulson agreement, or that Bromar's conduct did not rise to the level of "solicitation."

### 2. Breach of Confidentiality Provisions by Disclosing the Price List

█ Count III also alleges that Bromar provided a confidential price list to Borden, thereby breaching the broker agreement and the confidentiality agreement. The price list showed the prices that Paulson's customers paid for Borden products.

Bromar makes four arguments with respect to the disclosure of the price list: (1) that it was not covered by the April 1989 non-disclosure agreement; (2) that the Bromar–Paulson broker agreement did not prohibit disclosure of the list because Borden was not a "competitor" within the terms of the broker agreement; (3) that the price list was not confidential information; and (4) that disclosure of the list did not harm Paulson because Borden did not base its decision to end the Borden–Paulson agreement on the list.

The court accepts Bromar's arguments (1) and (2) above. Paulson does not refute that the price list was not supplied in connection with the April 1989 merger non-disclosure agreement, but rather in the course of the Paulson–Bromar broker relationship. Therefore, Paulson must show that supplying the price list to Borden breached the broker agreement. However, the broker agreement only prohibited giving information to competitors and Borden was not a competitor. A competitor is one who "solicits the same trade [or] customers." *Sutter Home Winery v. Vintage Selections*, 971 F.2d 401, 408 (9th Cir.1992). Because Paulson does not make any attempt to show that Borden was a competi-

tor, the court GRANTS summary judgment in Bromar's favor on the issue of whether it breached any confidentiality provisions.[3]

In summary, the court DENIES Paulson's counter-motion for summary judgment on count III, and GRANTS IN PART AND DENIES IN PART Bromar's motion for summary judgment on count III.

B. *Bromar's and Paulson's Counter–Motions for Summary Judgment on Count V (Tortious Interference With Contract)*

Both Bromar and Paulson have moved for summary judgment on Count V which alleges that Bromar tortiously interfered with the Borden–Paulson agreement. The elements of tortious interference are: (1) a contract between the plaintiff and a third party, (2) the defendant's knowledge of the contract, (3) the defendant's intentional inducement of the third party to breach the contract, (4) absence of justification on the defendant's part, (5) the subsequent breach of the contract by the third party, and (6) damages to the plaintiff.

*Beclar Corp. v. Young,* 7 Haw.App. 183, 193, 750 P.2d 934 (1988).

Bromar argues that the Paulson–Borden contract was terminable at will, and that therefore there was no induced breach of that contract. *Paulson, Inc. v. Bromar, Inc.,* 775 F.Supp. 1329, 1333–1335 (D.Haw. 1991) (Paulson–Borden contract was terminable at will). However, although there is no Hawaii case on point, a majority of other jurisdictions recognize an action for tortious interference with a contract terminable at will. *Pacific Gas & Electric Co. v. Bear Stearns & Co.,* 50 Cal.3d 1118, 270 Cal.Rptr. 1, 4, 791 P.2d 587, 590 (1990); Rest.2d Torts § 766, comment g. The theory behind allowing an action for interfering with an at will contract is that although the

termination of the contract is at the will of the parties, it is not at will to outside interferers. *Pacific Gas & Elec.,* 270 Cal. Rptr. at 4–5, 791 P.2d at 590–92. In the absence of Hawaii authority on point, the court finds that the Hawaii Supreme Court would adopt the majority position, and allow an action for the tort of interfering with a terminable at will contract.

On the issue of the sufficiency of evidence, Bromar and Paulson make the same arguments with respect to count V that they made with respect to the solicitation allegations of count III, and as above, the court finds that a material issue of fact exists as to whether Bromar caused Borden to terminate the Borden–Paulson agreement.

C. *Bromar's Motion to Dismiss Count IV (Implied Covenant of Good Faith)*

Bromar moves to dismiss Count IV alleging a breach of the covenant of good faith and fair dealing under Rule .12(b)(6). Paulson does not resist out of the belief that the court already dismissed this claim in its earlier ruling on Borden's motion. *Paulson,* 775 F.Supp. at 1336. Lest there be any doubt that the claim against Bromar was dismissed in the earlier order, the court GRANTS Bromar's motion to dismiss count IV for failure to state a claim upon which relief may be granted.

D. *Bromar's and Paulson's Counter–Motions for Summary Judgment on Count VI (Unfair Competition)*

Bromar and Paulson both move for summary judgment on count VI alleging unfair competition under Haw.Rev.Stat. § 480–2.

In its original motion, Bromar's only argument for summary judgment was that the court's earlier opinion in this case required dismissal of the unfair competition

---

**3.** Paulson also argues that Bromar breached the April 1989 non-disclosure agreement by "using" Paulson's financial statements to facilitate the takeover of Paulson's business. The non-disclosure agreement did prohibit the retention or use of the information given pursuant to it. However, Paulson has presented no evidence that Bromar used that information other than the fact that Bromar met with Borden. While the court is willing to allow a trier of fact to infer that Bromar solicited Borden's business during that meeting, the court does not see a basis to infer that that solicitation used Paulson's financial records. Thus, Bromar is entitled to summary judgment on the issue of whether it breached the confidentiality provisions.

claim. However, in its reply memorandum, Bromar raises several new arguments.[4] In accordance with Local Rule 220–4, the court will not consider these arguments.

In the only remaining argument, Bromar asserts that the court's earlier decision held that Paulson could only sue for pre-1987 acts under Haw.Rev.Stat. § 480–2, citing this court's opinion at 775 F.Supp. at 1337–39. The cited section does not support Bromar's argument. Although the statute was amended to bar suit by a business for deceptive practices in 1987, the unfair competition claim was not affected. *Id.* Thus, the court held that Paulson had standing as a business to sue for unfair competition under the statute. *Id.* Accordingly, the court DENIES Bromar's motion for summary judgment on Count VI.

Paulson also moves for summary judgment on Count VI, arguing that there is undisputed evidence of Bromar's unfair trade practices. Because the claim of unfair trade practices relies upon the same evidence as Paulson's claim of solicitation, and the court has already held that there remain genuine issues of material fact with respect to that evidence, the court DENIES Paulson's motion.

## III. THE BORDEN–PAULSON DISPUTE

### A. *Background*

The issues arising between Borden and Paulson center about alleged breaches of the Borden–Paulson distributorship agreement which provides as follows:

> Borden appoints Paulson the exclusive distributor in Hawaii of certain products which Borden manufactures and sells through its Grocery and Confectionery Products groups. Such products are listed in Schedule A, .... Such listing shall not preclude Paulson from distributing additional Borden food products as the same become available at the Borden distribution centers serving the Los Angeles or San Francisco markets, approval for which Borden will not unreasonably withhold. Borden shall also offer Paulson the first opportunity to distribute any other Borden food product which Borden plans to introduce into the Hawaii market.

Exh. A to Borden's Counter–Motion.

The court's October 8, 1992 Order noted that Paulson had three types of rights under the provision: (1) exclusive distributorship rights for products on Schedule A ("exclusivity rights"); (2) a guarantee that Borden would not unreasonably withhold approval of Paulson's right to distribute other available goods ("reasonable approval rights"); and (3) a first refusal right for other goods that Borden introduced into the Hawaii market ("first refusal rights").

The October 8, 1992 Order also resolved questions of law about when the statute of limitations for each type of contractual claim arose. The court held that a four year statute of limitation applied to each of the contract claims, and therefore Paulson was barred from raising any contract claim that had accrued before March 14, 1987. *Id.* at 7. The categories of contractual claims accrued in different ways, however. The court held that Paulson's exclusivity rights were a continuing right, and that Paulson could sue for all damages resulting from breaches in exclusivity between March 14, 1987 and termination of the agreement in July 1989. *Id.* at 10. In contrast, the court held that reasonable approval rights and first refusal rights accrued only once, and that if they had accrued before March 14, 1987 then Paulson was time barred from asserting them.

Paulson moves for partial summary judgment on the issue of liability with respect to the following four products or product lines that it alleges Borden distributed in violation of the Borden–Paulson agreement: Cracker Jack 6 oz. bags ("Cracker Jack"); Coco Lopez creme de cocoa ("Coco Lopez"); Foodservice products, a line of

---

**4.** Bromar makes the following arguments for the first time in its reply:

—Paulson has no standing because Bromar and Paulson were not competitors.

—There is no evidence that Paulson was damaged by Bromar's actions.

**744**

institutional food ("Foodservice products"); and Borden goods sold to the military on Hawaii ("military products").

Borden contends that Paulson's motion for summary judgment is inappropriate, and counter-moves for summary judgment with respect to the last three products (Coco Lopez, Foodservice, and military products) on the ground that the statute of limitations has lapsed.

B. *Paulson's Motions for Partial Summary Judgment and Borden's Cross–Motions for Summary Judgment*

1. *Cracker Jack*

Both sides agree that Cracker Jack was listed as one of the products which Paulson had an exclusive right to distribute in Hawaii, and that another distributor was allowed to distribute it throughout the term of the Borden–Paulson agreement, but Borden contends that Paulson waived its right to assert the Cracker Jack claim. Borden argues that Paulson failed to pursue the Cracker Jack issue for more than five years after George Corniotis rejected Borden's attempt to settle it in 1982. Exh. J to Borden Counter–Motion at 4.

The court finds that a genuine issue of material fact exists as to whether Paulson waived the Cracker Jack exclusivity right. Waiver may be implied by acts or conduct showing an intention to waive a claim. *Wilart Assoc. v. Kapiolani Plaza, Ltd.*, 7 Haw.App. 354, 359–60, 766 P.2d 1207 (1988). Five years of sitting on a claim could allow a reasonable juror to conclude that Paulson waived the claim, and thus, the court DENIES Paulson's motion for partial summary judgment of liability on the Cracker Jack claim.

2. *Coco Lopez*

Paulson claims that it had the right to distribute Coco Lopez under both the first refusal and the reasonable approval clauses of the Borden–Paulson agreement. Borden counters that the first refusal claim is time barred, and that there is no evidence of a failure to approve.

As it is undisputed that Borden introduced Coco Lopez in Hawaii well before March 14, 1987, the court finds that the statute of limitations has run on Paulson's claim of first refusal rights for Coco Lopez. As the October 8, 1992 Order held, a claim for the right of first refusal accrues only once, at the time that Borden introduced a product without offering it to Paulson. Paulson argues in vain that the right of first refusal was renewed when Borden switched Coco Lopez distributors in 1988 without offering it to Paulson. This argument conflicts with the plain language of the agreement which only gives a first refusal right for products which "Borden plans to introduce." Since Coco Lopez was already in the Hawaii market, Borden was not planning its introduction, and switching distributors did not trigger a new right of first refusal. Paulson's rights to Coco Lopez under the first refusal clause have lapsed, and the court GRANTS Borden's motion for partial summary judgment on this issue.

However, Paulson also argues that it was entitled to the Coco Lopez market due to the reasonable approval clause. Paulson claims that it was "automatically entitled" to distribute any product available in the San Francisco and Los Angeles distribution centers, and that Coco Lopez was available there. Borden counters that the reasonable approval clause requires a request for approval and an unreasonable denial of that request and that Paulson has not shown these.

The court agrees with Borden that the reasonable approval clause requires a request and an unreasonable refusal, and that Paulson has not shown either beyond dispute. The plain language of the provision is clear that it contemplates that Paulson may request to distribute Borden food products available in California. As evidence of a request, Paulson relies upon a March 24, 1989 letter from Corniotis to Lew Ash in which he demands the Coco Lopez account. Because the letter does not refer to the reasonable approval clause, nor the availability of Coco Lopez in Los Angeles or San Francisco, the court finds that a genuine issue of fact exists as to whether this letter was a request under the

reasonable approval clause. Moreover, the issue of whether Borden reasonably refused such a request also remains. Thus, the court DENIES Paulson's motion for partial summary judgment of liability on reasonable approval for Coco Lopez.

### 3. *Foodservice Products*

Paulson claims that it had both first refusal and reasonable approval rights to the Foodservice products line. Borden moves for summary judgment on the first refusal right as time barred, and asserts that genuine issues of material fact exist as to the reasonable approval clause.

As discussed in the Coco Lopez discussion, because Paulson admits that the Foodservice products were distributed in Hawaii before March 14, 1987, its first refusal claim is time barred, and the court GRANTS Borden's motion for summary judgment with respect to it.

Moving to the reasonable approval claim, as with Coco Lopez, Paulson has not shown undisputed evidence that it requested the Foodservice products, or that Borden unreasonably denied approval. Thus, Paulson's motion for partial summary judgment is DENIED.

### 4. *Military Products*

Paulson claims that Borden violated both its exclusivity rights and its first refusal rights by not allowing it to distribute Borden products to the military in Hawaii.

In 1981, when the Borden–Paulson distributorship agreement was executed, Borden military products in Hawaii were distributed by another distributor. In 1985, Borden consolidated its military products line into its Grocery and Confectionery division, and began serving the military worldwide through one distributor in Florida.[5] Paulson Motion Exh. C. Paulson admits that military products were not included in the original Borden–Paulson agreement, but contends that Borden's reassignment of the military products in 1985 gave Paulson either exclusivity rights or a first refusal right.

5. The parties sometimes refer to products marketed by the Grocery and Confectionery division

Because any first refusal right accrued at the latest in 1985, the court finds that Paulson is time barred from asserting a first refusal claim. Thus, the court GRANTS Borden's motion for summary judgment on the first refusal claim.

With respect to the exclusivity claim, the court finds that the contract is ambiguous as to whether military products should have been given to Paulson in 1985. The exclusivity provision made Paulson the "exclusive distributor in Hawaii of certain products which Borden manufactures and sells through its Grocery and Confectionery Products groups." Because military products are now manufactured and sold through the Grocery and Confectionery Products groups, Paulson has a colorable claim to being the exclusive distributor. However, in 1981, the parties were not contracting with reference to the military products line, and they apparently did not contemplate how Borden's future internal reorganization of military products would affect the Borden–Paulson agreement. Faced with this ambiguity, the court finds that the parties' course of performance is instructive as to the parties' intent. That course of performance was that neither side asserted that Paulson had an exclusivity right to the military products until Corniotis made the claim in his March 24, 1989 letter to Borden. Exh. D to Paulson Motion. Paulson's silence on the military products from 1985 to 1989 could be interpreted by a reasonable trier of fact to mean that the military products were not included in the exclusivity clause. Thus, the court finds that a genuine issue of material fact exists, and DENIES Paulson's motion for partial summary judgment on liability on the military products.

### CONCLUSION

The court has made the following rulings:

*Bromar Motions:*

1. Summary Judgment on Count III (Breach of Contract)—GRANTED IN PART AND DENIED IN PART

as National Broker Sales or NBS products.

2. Summary Judgment on Count V (Tortious Interference with Contract)—DENIED

3. Dismissal of Count IV (Breach of Implied Duty of Good Faith)—GRANTED

4. Summary Judgment on Count VI (Unfair Competition)—DENIED

*Paulson Counter–Motions against Bromar:*

1. Summary Judgment on Count III (Breach of Contract)—DENIED

2. Summary Judgment on Count V (Tortious Interference with Contract)—DENIED

3. Summary Judgment on Count VI (Unfair Competition)—DENIED

*Paulson Motions against Borden:*

1. Partial Summary Judgment of Liability—DENIED

*Borden Motions:*

1. Partial Summary Judgment on First Refusal Claims—GRANTED

IT IS SO ORDERED.